UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

BEVERLY STEWART   ON BEHALF OF J.F.                    PLAINTIFF

VERSUS                     CIVIL ACTION NO. 1:13cv22-LG-JMR

COMMISSIONER OF SOCIAL SECURITY, ET AL            DEFENDANTS

**REPORT AND RECOMMENDATION**

Plaintiff ,Beverly Stewart ,on Claimant's behalf,  filed a [1] Complaint on January 30, 2013 for judicial review of Defendant Commissioner of Social Security's ("Commissioner")  Denial of Claimant's  application for supplemental security income under the Social Security Act. Before the Court is the Claimant's ' [9] Motion for Summary Judgment filed on August 9,2013, Government's Memorandum in Opposition [13] filed on October 24,2013 and the Claimant's Rebuttal Brief [14] filed on November 6,2013.

Plaintiff, on Claimant's behalf, applied on April 22, 2010, for supplemental security income (SSI) [8, p. 15]. The application was denied initially and upon reconsideration. *Id.* An administrative law judge (ALJ) held a hearing on January 6, 2012.*Id*. On January 25, 2012, the ALJ issued a decision finding Claimant was not disabled at any time relevant to his decision[ 8, pp. 12-30]. On November 30, 2012, the Appeals Council denied review [8, pp. 5-9]. This case is now ripe for review

under sections 205(g) and 1631(c)(3) of the Social Security Act (Act), 42 U.S.C. " 405(g), 1383(c)(3).

Claimant was born on November 13,2001 [8, p. 18]. Plaintiff contends that Claimant was disabled due to attention deficit hyperactivity disorder (ADHD) and severe allergies [ 8, p. 162]. After reviewing the medical record, Claimant's school records, and the testimony at the hearing, the ALJ found Claimant had severe impairments of borderline intellectual functioning, attention deficit hyperactivity disorder, and allergies [ 8, p. 18].However, the ALJ determined  Claimant did not have an impairment or combination of impairments that met or medically equaled any listed impairment [ 8, pp. 18-19]. *See* 20 C.F.R. pt. 404, supt. P, app. 1 (2013).4 The ALJ also found Plaintiff did not have an impairment or combination of impairments that functionally equaled a listing. *Id* . Accordingly, the ALJ found Claimant was not disabled [ 8, p. 26].

This Court's review of the Commissioner's decision is limited to whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. ' 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Perales*, 402 U.S. at 401). The court "may not re-weigh

the evidence or substitute our judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision." *Jack v. Astrue*, 426 F. App'x 243, 244-245 (5th Cir. 2011). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Plaintiff bears the ultimate burden of proving disability. *See* 42 U.S.C. " 423(d)(5)(A), 1382c(a)(3)(H)(I); 20 C.F.R. § 416.912(a), (c). Plaintiff must provide the relevant medical and other evidence to prove Claimant's alleged disability as a result of his impairments, and if she fails to provide a complete medical record, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 416.912 (a), (c); 416.913(e); 416.916.

The definition of childhood SSI disability provides that an individual under the age of eighteen years shall be considered disabled if that individual has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(I). Consistent with Congressional intent, the regulations define the statutory standard of "marked and severe functional limitations " in terms of "listing- level severity." *See* 20 C.F.R. " 416.902, 416.906, 416.924(a), 416.926a(a).

The regulations establish a sequential evaluation process for determining disability for children. The three-step process requires a child to show that: (1) he was not working; (2) he had a "severe" impairment or combination of impairments; and (3) his impairment or combination of impairments was of listing-level severity, i.e., the impairment(s) met, medically equaled, or functionally equaled the severity of an impairment in the listings. *See* 20 C.F.R. ' 416.924. Evaluation of whether a child meets or medically equals a listing uses the same analysis as for all claimants. *See* 20 C.F.R. '' 416.925 and 416.926. Whether a child functionally equals a listing involves evaluation under the following six broad functional areas called domains:

>    (i) Acquiring and using information;
>
>    (ii) Attending and completing tasks;
>
>    (iii) Interacting and relating with others;
>
>    (iv) Moving about and manipulating objects;
>
>    (v) Caring for yourself; and
>
>    (vi) Health and physical well-being.

*See* 20 C.F.R. § 416.926a(b)(1). If a child has "marked" limitations in two domains or an "extreme" limitation in one domain, the child's impairment is functionally equivalent to a listed impairment. *See* 20 C.F.R. § 416.926a(d).

Plaintiff asserts that the Claimant met the listing for section 112.05D, mental retardation.[ Pl's Br.,p. 5]. The Government contends that the ALJ reviewed the

evidence of record and properly found that Claimant did not meet the listing. [8, pp. 18-19]. The Government further asserts that the ALJ set out the substantial evidence of record that supported his finding and his decision in this regard should be affirmed. *Id*

To meet the listing requirements for 112.05D, characterized by significantly sub-average general intellectual functioning with deficits in adaptive functioning, Claimant must satisfy the following requirements:

"A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function."

20 C.F.R. pt. 404, supt. P, app. 1.

The ALJ found that the Claimant had severe limitations of "borderline intellectual functioning, attention deficit hyperactivity disorder, and allergies" [. 8, p. 18]. In reviewing the evidence of record, the ALJ noted that during a mental health examination, Claimant scored an 81 on the verbal IQ and 63 on the full scale IQ of the Wechsler Intelligence Scale for Children-III [ 8, pp. 19, 309]. However, the ALJ determined that the scores did not appear to be valid [ 8, p. 19]. The ALJ observed that Dr. Stella Brown, Ph.D., a consultative examiner, found "It is believed that these results may not give a very good picture of the client's intellectual functioning given the rather broad range of scores but perhaps

highlights a need to assess the client's vision ... " [ 8, pp. 19, 308]. The ALJ also noted that Dr. Brown wrote that "it appears that the client may have some type of visual problem." [ 8, pp. 19, 309]. Dr. Brown found that Claimant's "problems seem best identified as, at worst, borderline intellectual functioning together with a learning disorder, not otherwise specified ... " [ 8, pp. 309]. The ALJ found that Plaintiff testified at the hearing that Claimant is supposed to wear glasses, but does not always wear them [ 8, pp. 19, 61-62]. The ALJ determined that the scores above were not valid scores [ 8, p. 19].

In reviewing the evidence of record, the ALJ recognized that Dr. Brown diagnosed Claimant with borderline intellectual functioning [ 8, pp. 18, 19, 310]. Dr. Brown noted that Claimant "seemed most cooperative and task oriented" [ 8, p. 305]. Dr. Brown stated that "it is believed that the results of this evaluation are representative of his current functioning" *Id*. Dr. Brown, in her summary of findings, stated that Claimant's "problems may best be identified as a history of problems consistent with features of attention deficit/hyperactivity disorder, combined type, a learning disorder not otherwise specified relative to weakness for all achievement skills assessed and borderline intellectual functioning" [ 8, p. 310]. Dr. Brown went on to state that, "[f]ortunately, if appropriate interventions are maintained and effective as well as instituted at his school and, if indeed the client might benefit from corrective lenses, it is suspected that his functioning may

significantly improve within the next 12 months if all of these interventions are helpful" *Id*. Dr. Brown concluded by recommending that Claimant may benefit from exceptional student services and the development of an individualized education plan to address his education needs. *Id*

Plaintiff contends that the ALJ's determination that the IQ scores were not valid is not supported by substantial evidence [Pl.'s Br. pp. 1, 5-11].Plaintiff further asserts that Dr Brown was merely offering speculative possible explanations for the validity or invalidity of IQ test . The Government asserts Dr. Brown's report projects that Claimant's functioning could "significantly improve" within a year [8, p. 310]. The Government alleges that Dr. Brown notes the wide discrepancy in the range of scores and notes a possible reason for the discrepancy [ 8, pp. 309-10]. Further, The Government contends that with the exception of the test scores, which fall within the range for Listing 112.5D, the record is devoid of any discussion of mental retardation as a possible impairment. The Government asserts that the records presented at the hearing include those from Claimant's doctors, mental health providers, and teachers. Claimant was treated at Weems Mental Health from June 12, 2008, through April 22, 2010, and September 7, 2010, through January 24, 2011 [ 8, pp. 281-97, 351-55]. Claimant was diagnosed as having attention deficit hyperactivity disorder[ 8, p. 351]. Claimant was also treated at Singing River Services from October 30, 2007, through December 31, 2007, and May 27, 2011,

through August 22, 2011 [ 8, pp. 249-65, 331-45, 356-62].  Claimant was also diagnosed with Attention Deficit Hyperactivity Disorder [ 8, pp. 256, 258, 260, 264, 356]. While a possible learning disorder (LD)is mentioned in these records, no mention is made that Claimant was suspected of mental retardation [ 8, pp. 256, 343, 359]. On a questionnaire dated May 12, 2010, Claimant's teacher noted Claimant exhibited no problems in the domains of moving about and manipulating objects or caring for himself [8, pp. 207-08]. The teacher noted slight problems in the domains of attending and completing tasks and interacting and relating with others [ 8, pp. 205-06]. The teacher did note problems in the domain of acquiring and using information; namely with vocabulary, reading comprehension, expressing ideas in written form and comprehending math problems [ 8, p. 204]. However, she reported Claimant "works independently well, as long as he has a clear understanding of the directions. He's very good to ask for help or double check his work. He loves [] Reading" [ 8, p. 204]. A school record dated May 25, 2010, noted that Claimant was in regular education [ 8, p. 202].

      The teacher noted that Claimant missed a lot of school and that she was not sure the absences were all due to illness, as she received only two doctors' excuses [ 8, p. 209]. A school record, dated May 25, 2010, also noted there was excessive absenteeism [8, p. 202]. Other school records, dated October 3, 2011, note that Claimant was referred for intervention in all subject areas [ 8, p. 230]. The record

indicated that Claimant had been absent nine times and tardy five times in the school year [8, pp. 230-31]. Additional school records, dated January 5, 2012, indicate Claimant was absent 13 days and tardy 13 days for the 2011-2012 school year [8, p. 232]. While Claimant had interaction with multiple medical and educational professionals, none of them (including Dr. Brown) diagnosed him with mental retardation or even suggested it as a possible impairment. Thus, the Court finds that the ALJ properly determined that Claimant's IQ scores were not valid, and his finding is supported by substantial evidence. .

In addition, Plaintiff alleges that ALJ erred by failing to recontact Dr. Brown for clarification as required 20 C.F.R. §§ 404.1512(e), 416. 912(e).[ Pl.'s Br. ,p. 11]. Plaintiff further contends that "20 C.F.R. §§ 404.1512(e), 416.912(e) provides that when the evidence received from a treating physician or psychologist or other medical source contains a conflict or ambiguity that must be resolved, the medical source will be contacted for clarification." [Pl.'s Br.,p. 11]. Plaintiff submits ALJ's failure to recontact Dr. Brown is grounds for remand.[ Pl.'s Br.,p.12].

The regulations for applications for SSI, under Title XVI of the Social Security Act, are at 20 C.F.R. 416.101 et seq.  The Government asserts the ALJ's decision was supported by substantial evidence so there was no need to recontact Dr. Brown. The Government further contends that the record contained sufficient evidence for the ALJ to decide Claimant's case and to determine that the IQ test

scores were not valid. The Government asserts in support of its contention that Dr. Brown's opinions regarding the scores were not ambiguous, incomplete, or unclear; Dr. Brown did not diagnose Claimant with mental retardation. The Government submits that Dr. Brown stated that she felt Claimant's functioning might "significantly improve" in the next twelve months [ 8, p. 309]. Moreover, the Government asserts that Dr. Brown's discussion regarding the impact of Claimant's potential vision problems on the outcome of the IQ test did not necessitate the ALJ recontacting Dr. Brown [ 8, pp. 309-10]. The Government alleges that Dr. Brown raised the possibility of something outside of her specialty, Claimant's vision, impacted the test results [ 8, pp. 309-10]. Thus the Court finds that Dr. Brown's report, in combination with the record, provides substantial evidence to support the ALJ's determination that the IQ test scores were not valid.

Further, the regulations regarding "recontacting medical sources" have changed since the ALJ's decision. The regulations were amended, effective March 26, 2012 *See* 77 Fed. Reg. 10651 (Feb. 23, 2012). The "recontacting medical sources" provision was deleted. Under the new regulations the decision to recontact a treating source is now a matter of ALJ discretion. *See* 20 C.F.R. § 416.920b(c)(1). The 2013 regulations do not include the explicit guidelines for when the ALJ will recontact a medical source. *See generally* 20 C.F.R. §§ 416.912, 920b(c)(1). The regulation states that "We may recontact your treating physician, psychologist, or

other medical source." 20 C.F.R. § 416.920b(c)(1). The regulation goes on to state that "We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence." *Id.* As this is a procedural rule, the new regulations would apply to this case upon remand, and the ALJ would not be required to recontact Dr. Brown. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 275, 114 S.Ct. 1483, 1502 (1994).

The Court finds that the ALJ properly reviewed and evaluated the evidence of record and determined that Claimant did not meet the listing for 112.05D (Doc. 8, p. 19). The Court further finds that Plaintiff failed to carry her burden of showing that Claimant was disabled within the meaning of the Social Security Act. "The claimant has the burden to prove that she is disabled within the meaning of the Social Security Act." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). Thus, the Court finds the ALJ's determination that Claimant was not disabled was based on substantial evidence of record and recommends that and that the ALJ 's final decision be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and

recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge andon all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Report and Recommendation that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 17th day of March, 2014.

/s/ *John M Roper, Sr.*
CHIEF UNITED STATES MAGISTRATE JUDGE