IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BEVERLY STEWART,**
**on behalf of J.F.**                                                    **PLAINTIFF**

**v.**                                                    **CAUSE NO. 1:13CV22-LG-JMR**

**CAROLYN W. COLVIN,**[1] **Acting**
**Commissioner of Social Security**                              **DEFENDANT**

MEMORANDUM OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATION

**BEFORE THE COURT** is the Report and Recommendation [15] entered by

Chief United States Magistrate Judge John M. Roper, Sr., on March 17, 2014.

Judge Roper recommends that the Court affirm the Commissioner of Social

Security's finding that the child claimant, J.F., is not disabled.  Beverly Stewart has

filed an Objection [16] to the Report and Recommendation on behalf of J.F., and

Acting Commissioner Carolyn W. Colvin has opposed the Objection.  After

reviewing the submissions of the parties, the record in this matter, and the

applicable law, the Court finds that the Report and Recommendation should be

adopted as the opinion of this Court.  Therefore, the Commissioner's decision is

affirmed, and the Motion for Summary Judgment filed by Stewart on behalf of J.F.

is denied.

FACTS AND PROCEDURAL HISTORY

In April 2010, Beverly Stewart applied for Supplemental Security Income on

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner
of Social Security.  Therefore, the clerk of court is directed to replace Michael J.
Astrue with Carolyn W. Colvin as the defendant to this lawsuit on the docket.

behalf of her son, J.F.  (Admin. R. at 115-18, ECF No. 8).  Stewart alleges that J.F., a school-age child who was born on November 13, 2001, is disabled due to attention deficit hyperactivity disorder, intellectual disability, and severe allergies.  She claims that his disability began on October 12, 2007.  (*Id.*)  Stewart's application was initially denied on August 17, 2010, and upon reconsideration on October 14, 2010.  (Admin. R. at 61, 62, ECF No. 8).  On January 6, 2012, a hearing was held before an ALJ, and Stewart testified on J.F.'s behalf.  (Admin. R. at 27, ECF No. 8).  The ALJ issued a decision on January 25, 2012, finding that J.F. has the following severe impairments: borderline intellectual functioning, attention deficit hyperactivity disorder, and allergies.  (Admin. R. at 4, ECF No. 8).  However, the ALJ determined that J.F. is not disabled, because (1) he does not have an impairment or combination of impairments that meets or exceeds the severity of one of the listed impairments in the disability regulations, and (2) he does not have an impairment or combination of impairments that functionally equals the severity of the listings.  (*Id.*)

The Appeals Council denied review on November 30, 2012, and Stewart filed a Complaint seeking judicial review.  (Admin. R.  at 1, ECF No. 8; Compl., ECF No. 1).  Judge Roper has issued a Report and Recommendation [15] proposing that the ALJ's decision should be affirmed.  Stewart has filed an Objection [16] to the Report and Recommendation, and Acting Commissioner Colvin has filed a Response [17] in opposition to the Objection.

### DISCUSSION

The standard of review for social security disability cases is limited to a determination of "(1) whether the Commissioner applied the proper legal standard[,] and (2) whether the Commissioner's decision is supported by substantial evidence." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).  A court reviewing the Commissioner's decision is not permitted to "re-weigh the evidence but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The court is not permitted to substitute its judgment for that of the Commissioner.  *Villa*, 895 F.2d at 1022.

The Social Security Act defines disability for children under the age of eighteen as "a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  In order to be adjudged disabled under the Act, a child must: (1) not be engaged in substantial gainful activity; (2) have an impairment that is "severe"; and (3) have an impairment that "meets, medically equals or functionally equals" the impairments listed in the

disability regulations.  20 C.F.R. § 416.924(a)-(d).  The only requirement that is at issue in this social security appeal is the third requirement.  Stewart argues that this requirement is met, because J.F.'s impairment satisfies Listing 112.05(D), which pertains to intellectual disability (formerly known as mental retardation).  A claimant satisfies Listing 112.05(D) if his impairment is "[c]haracterized by significantly subaverage general intellectual function with deficits in adaptive functioning," and he has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation or function."  20 C.F.R. Part 404, Subpt. P, App. 1.

The primary point of contention in the present case is the validity of J.F.'s psychological evaluation, which was conducted by Stella W. Brown, Ph. D., in July 2010.  In the introductory section of the evaluation entitled "Reason for Referral," Dr. Brown stated:

> [J.F.]'s mother, Ms. Beverly Stewart, was consulted in the presence of [J.F.] to obtain information about him.  She presents as a reliable informant.  [J.F.] seemed most cooperative and task-oriented.  **Thus, it is believed that the results of this evaluation are representative of his current functioning**.

(Admin. R. at 301, ECF No. 8) (emphasis added).  Dr. Brown evaluated J.F. using the Wechsler Intelligence Scale for Children-IV.  (*Id.* at 304).  J.F.'s verbal comprehension IQ score was 81; his personal reasoning IQ score was 63; his working memory IQ was 71; his processing speed IQ was 65; and his full scale IQ was 63.  (*Id.*)   In the section of the evaluation entitled "Assessment Results," Dr. Brown gave the following opinions regarding the discrepancy between J.F.'s verbal

comprehension IQ and perceptual reasoning IQ:

> This discrepancy seems to highlight the client's problems with his ability to do well on visual tasks and, given at least one error [J.F.] made today, it is wondered if indeed corrective lenses might result in a somewhat higher perceptual reasoning IQ . . . . **It is believed that these results may not give a very good picture of [J.F.]'s intellectual functioning given the rather broad range of scores but perhaps highlights a need to assess the client's vision to see if it might in any way result in a negative impact on measures sensitive to visual abilities**.

(*Id.*) (emphasis added). Dr. Brown concluded, "[J.F.]'s problems seem best identified as, at worst, borderline intellectual functioning together with a learning disorder, not otherwise specified, relative to a weakness for all achievement skills assessed together with a history of problems consistent with features of an attention deficit/ hyperactivity disorder, combined type." (*Id.* at 305). Dr. Brown further opined that "if appropriate interventions are maintained and effective as well as instituted at [J.F.]'s school and, if indeed [J.F.] might benefit from corrective lenses, it is suspected that his functioning may significantly improve within the next 12 months if all of these interventions are helpful." (*Id.* at 306). At a later date, J.F.'s vision was tested, and he was provided with glasses. (Admin. R. at 57, ECF No. 8). Stewart testified at the administrative hearing that J.F. does not always wear his glasses. (*Id.*) J.F.'s IQ was not reevaluated in order to see whether his glasses improved his IQ scores.

    Dr. Brown's opinion that J.F.'s lower perceptual IQ scores may have been caused by a vision problem, combined with Stewart's admission at the administrative hearing that J.F. should wear glasses but does not always do so, led

the ALJ to conclude that J.F.'s July 2010 IQ scores were not valid.  (Admin. R. at 15, ECF No. 8).  As a result, the ALJ determined that J.F. does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairment related to intellectual disability/ mental retardation.  (*Id.* at 14-15).  Judge Roper agreed with this conclusion in his Report and Recommendation, particularly since Dr. Brown did not diagnose J.F. with mental retardation.  (Report & Recommendation at 9, ECF No. 15).

> In her Objection, Stewart argues:
>
> > Plaintiff acknowledges Dr. Brown's discussion of the possibility of vision problems impacting the [IQ] scores.  But as between that uncertain discussion of the possible impact of vision problems on the scores and Dr. Brown's plain and straightforward statement "that the results of this evaluation are representative of his current functioning" . . . the uncertain statements relied upon by the Commissioner and the Magistrate Judge cannot constitute substantial evidence as against the clarity of the certain statement which speaks directly and plainly to the fact that Dr. Brown was of the opinion that the testing was valid.

(Pl.'s Objection at 3, ECF No. 16).  However, the statement relied on by Stewart was not certain as Stewart contends.  Dr. Brown merely stated, "Thus, *it is believed* that the results of this evaluation are representative of his current functioning." (Admin. R. at 301, ECF No. 8) (emphasis added).  It also should be noted that Dr. Brown's use of the word, "thus," when reviewed in context, also seems to refer to the level of cooperation she received from J.F. and perhaps the reliability of the information provided by Stewart, not the accuracy of the IQ scores.  (*See id.*)  J.F.'s IQ scores were not specifically discussed in the sentences preceding the statement

relied upon by Stewart.  (*See id.*)

The ALJ's conclusions are supported by Dr. Brown's recommendation that a reassessment of J.F.'s abilities "might provide a more reliable account of [J.F.'s] nonverbal abilities," if an optometrist later determined that he needed glasses.  (*Id.* at 306).  Although it was later determined that J.F. needed glasses, Dr. Brown's recommendation was not followed, and J.F. was not reevaluated.  As the Commissioner correctly asserted, "The ALJ, therefore, did not substitute his opinion for that of [Dr. Brown], but rather properly considered her opinion in light of the extrinsic evidence that [J.F.] was not wearing his glasses [at the time of the Dr. Brown's evaluation]. . . ."  (Def.'s Resp. at 3, ECF No. 17).

Stewart also argues that Judge Roper improperly relied on the lack of a formal mental retardation diagnosis in his Report and Recommendation.  However, in a similar case, the Fifth Circuit has relied in part on the lack of a mental retardation diagnosis when finding that a child's low performance IQ scores did not satisfy the listing related to intellectual disability/mental retardation.  *Richard ex rel. Z. N. F. v. Astrue*, No. 11-30766, 480 F. App'x 773, 777 (5th Cir. June 15, 2012).  As a result, it appears that the lack of a formal diagnosis of mental retardation may be considered as supporting evidence for an ALJ's determination that a child's impairment does not meet the intellectual disability/ mental retardation threshold.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's determination that J.F. is not disabled should be affirmed, and the Report and

Recommendation entered by Judge Roper should be adopted as the opinion of this Court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Report and Recommendation [15] entered by Chief United States Magistrate Judge John M. Roper, Sr., on March 17, 2014, is **ADOPTED** as the opinion of this Court. The Commissioner's decision that the claimant J.F. is not disabled is **AFFIRMED**. A separate judgment will be entered pursuant to Fed. R. Civ. P. 58(a).

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [9] filed by Beverly Stewart is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the clerk of court is directed to replace Michael J. Astrue with Carolyn W. Colvin as the defendant to this lawsuit on the docket.

**SO ORDERED AND ADJUDGED** this the 17th day of April, 2014.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE